[Civ. No. 30618.   Second Dist., Div. Three.   Mar. 25, 1968.]

PEARL PRIME, Plaintiff and Appellant, v. JAMES HYNE, as Executor, etc., et al., Defendants and Respondents.

Roderick Johnston and Paul L. Riles for Plaintiff and Appellant.

Belcher, Henzie & Biegenzahn and George M. Henzie for Defendants and Respondents.

SHINN, J.*—Appeal by plaintiff from a summary judgment in favor of defendants in an action for a declaration of rights and duties of the parties under a lease and a separate contract for the purchase by plaintiff of prospective interests of defendant devisees in real property now in probate, which may be distributed to them.

By the pleadings and the declarations which were before the court upon the hearing of the motion for summary judgment the following facts were established: July 21, 1961, Estelle Williams owned a parcel of real property on Sunset Boulevard in Los Angeles, which was under lease to plaintiff Pearl Prime and was used as a nursery school. There was then in existence a will of Mrs. Williams by the terms of which she devised her estate to John W. Williams, Jr., Barbara Vickers, Thomas Williams and Marilyn Hodges, hereinafter for convenience referred to as "heirs." July 21, 1961, the heirs and Miss Prime entered into an agreement by which Miss Prime agreed to buy and the heirs agreed to sell whatever interests in the property they might receive through a distribution of the estate of Mrs. Williams. The agreed purchase price was $70,000 payable part in cash and part on time. It was provided that if all the respective interests were

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

not so distributed those that were distributed would be sold for a proportionate part of the total purchase price.

Certain provisions of the agreement were the following:

"(a) Second Parties do not now have any right, title, claim or interest in or to said real property, and merely expect to inherit said real property upon the death of ESTELLE WIL-LIAMS, provided they survive her;

"(b) That ESTELLE WILLIAMS by a last will might devise said real property to others than Second Parties or any of them;

"(c) That it is legally possible that said real property might be sold or hypothecated during the life of ESTELLE WILLIAMS in which event the Second Parties could not deliver title to First Party;

"(d) That if Second Parties or any of them failed to survive ESTELLE WILLIAMS that said real property would in all probability be distributed to minor heirs who would in no way be bound by the within agreement; . . . ."

The agreement also provided that immediately after the parties of the second part (the heirs) received legal title to said property by decree of distribution of Mrs. Williams' estate they would enter into an escrow to carry out the terms of the agreement.

On July 21, 1961, Mrs. Williams and Miss Prime entered into a lease of the property to the latter at a monthly rental of $400 for a term ending "60 days after distribution of this property from Estelle P. Williams' estate." The lease was executed on behalf of Mrs. Williams by John W. Williams, Jr., as her attorney in fact. For no apparent reason the heirs were named with Mrs. Williams as lessors and they also signed the lease.

Mrs. Williams died June 5, 1964, her will was probated, John W. Williams, Jr. was appointed executor but "removed himself" and James Hyne was appointed in his stead.

As far as shown by the record the estate consisted of the real property and shares of stock of an insurance company, of unstated value. By the will the executor was authorized to sell the property of the estate; James Hyne elected to sell the real property; he caused a "for sale" sign to be placed on the property, where it remained for several hours.

Miss Prime instituted the present action for declaratory relief, an injunction against sale of the property by the estate and damages. The first cause of action of the complaint sought a declaration of the rights and duties of the parties under the

lease. The second cause of action was based upon the contract and asked for judgment declaring it to be the duty of the defendant heirs to comply with the contract, and the third cause of action asserted a claim for an injunction and damages for interference with plaintiff's business.

Defendants made a motion for summary judgment upon several independent grounds, one of which was that the agreement of sale was void as in violation of the rule against perpetuities as declared in section 715.2 of the Civil Code.[1] The court rendered judgment declaring the agreement to be void and that plaintiff has no right, title, interest or claim in or to the property, and dismissing the action only as to the second cause of action. Plaintiff appeals.

It is apparent from the record and the briefs that the basis of the judgment was the court's conclusion that the agreement was void in its inception for the reason that it was not certain that the title to the interests of the heirs in the property would vest in Miss Prime under the contract within 21 years after the death of Mrs. Williams.

It is well settled that the requirement of the rule against perpetuities as stated in section 715.2 that title *must* vest within the prescribed period means that there must be absolute certainty at the time of the contract that title will vest within that period.

An essential and indispensable condition of the contract was that the interests of the heirs be distributed to them from Mrs. Williams' estate. If this event was not bound to occur within the limited time title to the property could not become vested in plaintiff so as to avoid the effect of the rule against perpetuities.

It has been held in several cases that there is no absolute certainty that the estate of a person living at the time of the creation of some right to an interest in his estate will be distributed within 21 years after his death.

Distribution of the estate of a decedent is subject to many

---

[1] "No interest in real or personal property shall be good unless it must vest, if at all, not later than 21 years after some life in being at the creation of the interest and any period of gestation involved in the situation to which the limitation applies. The lives selected to govern the time of vesting must not be so numerous or so situated that evidence of their deaths is likely to be unreasonably difficult to obtain. It is intended by the enactment of this section to make effective in this State the American common-law rule against perpetuities."

This section was erroneously referred to in the notice of motion as section 716.

possible delays. Numerous of these are listed in the opinion in *Estate of Campbell,* 28 Cal.App.2d 102 [82 P.2d 22], such as delay in the institution of probate proceedings, neglect and inattention, protracted litigation; "[a]ll of these possibilities, not to mention others, might become realities in a particular case, causing a delay beyond the time limited." (P. 106.) The court also said: "While it can be said that the reasonable probabilities were in favor of a distribution of this estate well within the time required, to hold that such a result, with the consequent vesting of interest, was certain to occur and would inevitably take place would be to disregard the statute by accepting a high degree of probability as a certainty." (See also *Estate of Johnston,* 47 Cal.2d 265, 270 [303 P.2d 1].)[2]

Without noticing these cases, which were cited by respondents, appellant contends that the estate should have been distributed within a reasonable time and that a reasonable time would have been less than 21 years; therefore the rule against perpetuities does not apply. For this proposition appellant cites *Wong* v. *DiGrazia,* 60 Cal.2d 525 [35 Cal.Rptr. 241, 386 P.2d 817]. In this case the court considered a contract for a lease which was to commence upon completion of a building on the premises. The contract provided that the lessor would forthwith commence construction of the building in accordance with plans and specifications that had been agreed upon and continue expeditiously until the building was completed. The court held that the lessor had a duty imposed by the contract to complete the building within a reasonable time, which would be less than 21 years, and although the lessee's interest would not vest until the building was completed there was no violation of the rule against perpetuities. The court was considering the special problems which arise out of "on completion" leases, a modern and common class of leases. The reasoning of the opinion is not applicable to an agreement for the sale of a mere expectancy. ▮▮ Contracts for the sale of expectancies of heirs and devisees are in the

<hr>

[2]The will of Campbell left the residue of his estate to officers of a lodge who would be in office at the time of the distribution of the estate and who would be unknown until that time. This provision of the will was held to be invalid as in violation of sections 715 and 716 of the Civil Code in that it purported to restrain the power of alienation for more than 25 years. It was also held to be violative of the prohibition of perpetuities of section 9, article XX of the State Constitution. Although the court did not so state, the provision was also in violation of the rule of the common law then in effect in California. (*Estate of Sahlender,* 89 Cal.App.2d 329 [201 P.2d 69].) That rule was the one which later became section 715.2 of the Civil Code.

general class of interests created by wills, deeds or contracts to vest in the future. As to these the rules against restraints of alienation and perpetuities are strictly enforced. (Cases cited *supra; Estate of Troy,* 214 Cal. 53 [3 P.2d 930].) The trial court applied the rule as it existed in California.

A further contention of appellant is that the defendants should be held estopped from selling the property through probate and from contesting her right to buy the property. The argument upon this point may be stated briefly; it runs as follows: Mrs. Williams was the actual seller of the property; through her agent John W. Williams, Jr., she agreed upon the price and terms of a sale, but in order to avoid a capital gain tax liability it was agreed that title would be distributed to the heirs through probate of the will and that they would make the conveyance to appellant and receive the purchase price. In reliance upon this plan of procedure appellant sold property she owned and spent large sums in making repairs and improvements of the property and for taxes and insurance, all to her damage if she fails to obtain the property.

The fact that all the interested parties had such a plan of procedure is proved by the lease and the agreement that were entered into. Whether the purpose was to avoid a tax liability is of no consequence. But if that was the purpose, it would only go to prove that Mrs. Williams did not intend to sell the property but was satisfied to receive the rental of $400 per month and to let the heirs have the $70,000.

It is but just to all the parties to say that they acted in good faith. No doubt they expected the property would be distributed to the heirs. They believed in 1961 that the property was worth $70,000; they did not anticipate that the value would greatly increase while Mrs. Williams still lived. But in 1964 the taxing authorities valued it at $140,000. As a consequence, as shown by the declaration of Mr. Hyne, property had to be sold to realize approximately an additional $30,000 in order to meet the unexpected obligations of the estate for taxes and expenses of administration. Appellant cannot prevent the sale of the real property.

The complete answer to the foregoing contentions of appellant is that she holds an illegal contract under which the court can grant her no relief. "A party to an illegal contract cannot ratify it, cannot be estopped from relying on the illegality, and cannot waive his right to urge that

defense.'' (*City Lincoln-Mercury Co.* v. *Lindsey*, 52 Cal.2d 267, 274 [339 P.2d 851].)

■ We finally give attention to the contention that appellant's interest in the property vested under section 715.8[3] of the Civil Code, enacted in 1963. We pass the question, as the briefs do, whether this new section could be applied to the contract which was made in 1961. Whether the rule stated in the section was new or merely a codification of the existing case law, it affords appellant no comfort. Appellant says her interest was vested because there were persons in being who could have conveyed a fee simple title to the property, but she fails to state what interest would be thus vested.

In *Bridge* v. *Kedon*, 163 Cal. 493, 499 [126 P. 149, 43 L.R.A. N.S. 404], the court quoted from 3 Pomeroy's Equity Jurisprudence, section 1271, which states that the assignment of an expectancy, possibility or contingency creates ''an equitable ownership of property in abeyance, so to speak, which finally changed into an absolute property upon the happening of the future event.'' The court said (p. 500): ''. . . as soon as the assignment is executed the assignee becomes vested of an equitable right to receive the property ultimately, a right which, by the rules of equity, is sure to become an ordinary vested property right when the event occurs by which the possibility is realized as a certainty. . . . In the case of a loan, according to these principles, there is created by the assignment a present equitable charge on the property, which equity recognizes as vested, although it is neither vested nor valid at law, and which, when the descent is cast at once ripens into a lien upon the property for the security of the money loaned.''

Appellant had a vested contract right which, if valid and fair, would be enforceable in equity. She had no ownership of a present or future interest in the property. No claim upon the property in excess of her existing rights could vest in her unless the property should be distributed in whole or in part to the heirs, which might never happen.

The determination of appellant's rights under the contract

---

[3] ''An interest in real or personal property, legal or equitable, is vested if and when there is a person in being who could convey or there are persons in being, irrespective of the nature of their respective interests, who together could convey a fee simple title thereto.

''An interest is not invalid, either in whole or in part, merely because the duration of the interest may exceed the time within which future interests in property must vest under this title, if the interest must vest, if at all, within such time.''

did not require the decision of any question of fact. The undisputed facts presented a pure question of law. The briefs argue the question whether the contract is fair and enforceable in equity but in view of our conclusion that it is void it is immaterial whether it would be enforceable if it were valid.

The judgment is affirmed.

Ford, P. J., and Cobey, J., concurred.