The **TEMPLE HOYNE BUELL FOUNDATION, a Colorado nonprofit corporation, and Buell Development Corporation, a Colorado corporation, Plaintiffs–Appellees and Cross–Appellants,**

v.

**HOLLAND & HART, a partnership and Bruce T. Buell, Defendants–Appellants and Cross–Appellees.**

No. 91CA0244.

Colorado Court of Appeals, Div. II.

Aug. 27, 1992.

Rehearing Denied Oct. 8, 1992.

Certiorari Denied May 10, 1993.

Baker & Hostetler, J. Lawrence Hamil, Michelle W. Stern and Charles B. Hecht, Denver, for plaintiffs-appellees and cross-appellants.

Holme Roberts & Owen, Daniel S. Hoffman, William S. Huff, Boyd N. Boland and Jon Bernhardt, Denver, for defendants-appellants and cross-appellees.

Opinion by Judge SMITH.

In this legal malpractice action, defendants, Holland & Hart and Bruce Buell, appeal the final judgment entered on a jury verdict awarding plaintiffs, Buell Development Corporation, $3,364,011 in damages and $2,125,195 in pre-judgment interest. Plaintiffs cross-appeal the portion of the trial court's judgment denying various costs. We reverse the judgment and remand for a new trial.

The judgment at issue here arose from defendants' representation of plaintiffs in connection with the sale of stock in Kings County Development Corporation (KCDC), a California corporation, to John Rocovich. As part of the transaction, defendants drafted an option contract which provided that part of the consideration for the stock sale was an option in favor of plaintiffs to acquire from Rocovich a percentage of KCDC's minerals underlying its California farmland should KCDC ever distribute these interests to its shareholders.

After this contract was signed, KCDC instituted two lawsuits against various defendants, including plaintiffs and Rocovich. The lawsuit asserted, among other things, that plaintiffs and Rocovich had breached their fiduciary duties by entering into the foregoing stock transaction.

In 1982, KCDC settled with Rocovich, and, as part of that settlement, Rocovich conveyed all of his KCDC stock to the corporation. KCDC, meanwhile, decided to distribute its mineral interest to the corporation's shareholders within the year 1982.

While the KCDC lawsuits were pending, plaintiffs attempted to exercise their option under the contract executed with Rocovich. KCDC refused to honor the agreement between plaintiffs and Rocovich and to transfer the mineral interests, asserting that the option violated the Rule against Perpetuities and was therefore unenforceable.

In 1984, plaintiffs, who had discharged defendants as counsel in 1981, during the KCDC lawsuits, settled their dispute with the corporation. Under the terms of this settlement, plaintiffs received one-half of the mineral interests that they would have been entitled to under the option.

In 1989, plaintiffs initiated this lawsuit against defendants, asserting claims of negligence and breach of contract relating to the option contract with Rocovich. Soon after the litigation commenced, defendants sought a determination from the trial court that the option did not violate the Rule against Perpetuities.

At the evidentiary hearing on this issue, defendants attempted to establish that the option was exclusively contractual in nature and, thus, outside the Rule. The trial court disagreed, concluding that the option was subject to, and in violation of, the Rule. Moreover, the court ruled that there were no public policy reasons to allow the enforcement of the option in spite of the violation. Finally, the trial court ruled that

no testimony on this particular issue would be admissible at trial.

Numerous expert witnesses for both parties testified at trial concerning the effects of the Rule against Perpetuities violation as it related to the rights of the parties under the option contract. At the conclusion of the evidence, the jury was instructed that plaintiffs had to prove two conjectural "cases within a case": (1) That plaintiffs would have lost a lawsuit brought to enforce the option as drafted by defendants; and (2) that plaintiffs would have won a lawsuit to enforce the option if defendants had not drafted it negligently.

The jury returned a verdict that plaintiffs' losses were caused solely by defendants' negligence.

## I.

Defendants contend that the jury verdict in favor of plaintiffs on their claim for legal malpractice is erroneous as a matter of law. The crux of defendants' argument is the trial court's pre-trial ruling that the option contract violated the Rule against Perpetuities. Defendants argue that the trial court's ruling was erroneous, tainted the entire trial, and justifies entry of judgment in their favor. We agree that the trial court's ruling was in error and that such error did, indeed, pervade the trial proceedings. We disagree, however, that these conclusions dispose of plaintiffs' claim of legal malpractice.

As relevant here, the option provided: In further consideration of the mutual promises of the parties as herein provided, we agree as follows with respect to the mineral interests *owned by [KCDC]*:

. . . .

2. I [Rocovich] will use my best efforts to have the mineral interests ... distributed or made available to shareholders of [KCDC] as soon as possible ...

3. From and after the time of distribution, plaintiffs will have *six months to purchase, at its option,* 31.73576% of *the mineral interests now owned*

*by [KCDC]* . . ., and I [Rocovich] agree to sell to plaintiffs said interest for the sum of $305,500; if plaintiffs should not exercise its option, I [Rocovich] will, nevertheless, have the option, at any time during said six-month period, to offer plaintiffs the said 31.73576% of [KCDC] mineral interests which plaintiffs shall be required to purchase for the sum of $305,500.00.

. . . .

This agreement will bind and enure to the benefit of the heirs, successors and assigns of the respective parties. (emphasis added)

### A.

### The Rule Issue

■ The Rule against Perpetuities is a rule of property law, the fundamental purpose of which is to keep property "unfettered," that is, free from inconvenient limitations. Restatement of Law of Property at 2129 (Introductory Note); *see also* Leach, *Perpetuities in a Nutshell,* 51 Harv.L.Rev 638 (1938). As such, the Rule operates to invalidate future interests in property, real or personal, legal or equitable, which vest too remotely, specifically, "later than twenty-one years after some life in being at the creation of the interest." *See Perry v. Brundage,* 200 Colo. 229, 614 P.2d 362 (1980); Cal.Civ.Code § 715.2 (West 1982).

■ An option to purchase, such as that at issue here, may or may not be subject to the Rule. *See* 5A R. Powell & P. Rohan, *Powell on Real Property* § 767B (1992). If the option may continue for a period longer than 21 years *and* it creates an interest in a specific parcel of land or in any "specific identifiable thing," the option is required to comply with the Rule. *See* Restatement of Law of Property § 393 comment c, and § 401 comment b (1944). In such instances, the option, because it is specifically enforceable, "fetters" the property which is the subject matter of the option by imposing upon it an unfulfilled condition precedent for too long a time.

*See generally* Restatement of Law of Property §§ 370, 393, & 401 (1944); *Leach, supra.*

■ If the option is determined *not* to create an enforceable interest in a specific parcel of land or in any "specific identifiable thing," then no specific property is "fettered" or chargeable with performance under the option. *See* Restatement of Law of Property § 401. Nor is any particular property subject to a potentially objectionable unfulfilled condition precedent. Such option, therefore, while creating enforceable contract rights between the parties, "involves no fettering of any property and hence, [presents] no occasion for applying the Rule." Restatement of Law of Property § 401.

In analyzing the option here, the trial court rejected defendants' argument that the option was of this latter character, that is, "exclusively contractual." The trial court concluded, instead, that the option did implicate a specific property interest thereby subjecting it to the Rule. The crux of the trial court's conclusion was its determination that:

> The [option] does concern *specific land.* The [option] concerns the mineral interest which was then owned by [KCDC] ... A clearly identifiable mineral interest is involved in the [option] which can be stated with particularity and identified at the time of the [option is execution.] The [option] binds the parties to obligations regarding a particular piece of property to the exclusion of any other property....

Having found the Rule applied, the trial court turned to the question of whether the option was in violation of the Rule's terms. The trial court answered the question in the affirmative, noting that when the mineral interests would be distributed was uncertain and, hence, that "there are numerous possibilities which would result in plaintiffs' interest not vesting within the period of 21 years after Rocovich [the measuring life] dies."

Defendants contend that the uncertainty created by the unknown date of the mineral distribution, if any, was an irrelevant circumstance because the Rule had no applicability to the option. The essence of defendants' argument is, thus, that the trial court erred in its initial conclusion that the option concerned specific property.

A cursory review of the terms of the option reveals that the parties clearly *identified* a specific property interest as the subject matter of the option. However, based on the following principles of property and corporate law, we conclude that the terms were insufficient to *create an interest* in the property described.

It is fundamental that a grantor can convey no more rights in property than he himself owns. *Murray v. Title Insurance & Trust Co.,* 250 Cal.App.2d 248, 58 Cal. Rptr. 273 (1987). Accordingly, for the option here to have created an interest in a specific property, to wit, the mineral property identified in the option, Rocovich, the "grantor," would have to have had, at the time the option was executed, an interest, legal or equitable, in this property.

The record discloses, however, that, at the pertinent time, Rocovich's status was only that of a shareholder in KCDC. As a shareholder, Rocovich was entitled to an interest in the minerals only *if and when* they were *distributed.* However, until such time, he held no interest in specific property of the corporation.

As succinctly stated by the United States Supreme Court in *Rhode Island Hospital Trust Co. v. Doughton,* 270 U.S. 69, 46 S.Ct. 256, 70 L.Ed. 475 (1925):

> The owner of the shares of stock in a company is not the owner of the corporation's property. He has a right to his share in the earnings of the corporation, as they may be declared in dividends, arising from the use of all its property. In the dissolution of the corporation he may take his proportionate share in what is left, after all the debts of the corporation have been paid and the assets are divided in accordance with the law of its creation. *But he does not own the corporate property.* (emphasis added)

Thus, when the parties executed their contract, Rocovich's rights and interests,

while, indeed, valuable and enforceable, were in KCDC's earnings and profits not in its *divisible assets,* such as the mineral interests. *See People ·v. Westfall,* 185 Colo. 110, 522 P.2d 100 (1974).

At most, Rocovich held only a hope or chance of acquiring *specific* corporate property. Neither a hope or a chance, however, are sufficient to create an interest in property. Cal.Civ.Code § 700 (West 1982); *see also Baker v. Young,* 798 P.2d 889 (Colo.1990) ("The term 'property' includes ... everything that is the subject of *ownership....*").

█ Hence, until the mineral interests were *distributed,* Rocovich had no rights in the mineral interests which he could convey or "fetter." The option contract could not, thus, subject this particular property to an unfulfilled condition precedent. Indeed, KCDC was equally free, both before and after the parties executed the option, to dispose of the mineral interests at issue in any particular manner it chose and to any particular person or entity.

The option contract, in sum, involved no fettering of a specific parcel of property or of any specific identifiable thing and, hence, presented no opportunity to invoke the Rule.

This is not to say that the option was unenforceable. Indeed, between plaintiffs and Rocovich, the contract created rights and obligations enforceable by one against the other, their heirs, successors, and assigns. Of critical significance, however, the contract, in the words of defendants' expert, did "nothing whatsoever to the subject matter of their contract—property owned by a stranger to [that] contract."

Plaintiffs contest this conclusion on a number of grounds. First, they assert that it ignores the holding of *Prime v. Hyne,* 260 Cal.App.2d 397, 67 Cal.Rptr. 170 (1968). This case involved the validity of a contract between a third party, Prime, and prospective devisees to certain real property under the will of a decedent who was living when the contract was made. The contract provided for the transfer of the devisees' interest to Prime "after [the devisees] received legal title ... *by decree of distribution* of

[the decedent's] estate." (emphasis added) Upon the decedent's death the executor, who was given the authority to sell the property of the estate, elected to do so. Prime brought a lawsuit to enforce the devisees obligations under the contract. The trial court held that Prime's interest was invalid, however, noting that distribution of the estate was not certain to occur within twenty-one years after the decedent's death.

*Prime,* however, does not turn on the fact that decedent was living but rather is an example of an administrative contingency case in which the devisees acquire an interest in the property immediately upon the testator's death but the agreement delays *vesting* of this interest until distribution of the estate is made. In such instance, the devise violates the Rule because, as stated in the Leach article, *supra:*

> Although everyone expects the administration of his estate ... to be completed within a very short time, it is mathematically more than a period of perpetuities.

█ The contract here is not subject to such a contingency. No interest in the minerals could arise in Rocovich or in plaintiffs *unless and until* the mineral interests were distributed by KCDC to its shareholders. Once the interest was created by distribution, moreover, the option to purchase it was to be exercised promptly, specifically, six months "from and after the time of distribution" or it would lapse. Hence, unlike the situation in *Prime,* there was no "mathematical possibility" that once created, the interest would vest beyond the period of perpetuities.

Next, plaintiffs argue that Rocovich's sale of his stock to KCDC as part of their settlement agreement "created" an interest in the minerals which triggered Rocovich's obligations under the contract and the applicability of the Rule. This argument is without merit.

█ Rocovich could assign his obligations to KCDC only if such assignment would not impair plaintiffs' rights. *See* Restatement (Second) of Contracts § 317(2) (1981). Such is clearly not the case here

where the assignment, in triggering the Rule, would operate to destroy plaintiffs' rights.

In conclusion, we hold that the trial court erred in ruling that the option contract violated the Rule against Perpetuities.

### B.

### Effect of the Erroneous Ruling

Defendants argue that the trial court's erroneous pre-trial ruling tainted the entire trial and thus constituted prejudicial error. Under the particular circumstances here, we agree.

The record reveals that, prior to trial, the trial court ruled that all testimony by defendants' experts or other witnesses concerning *whether* the contract violated the Rule against Perpetuities was inadmissible. Moreover, at trial the jury was instructed that:

> [Plaintiffs] must prove that if had it sued to enforce the [option] it would have lost that court action solely because of defendant's negligence....

Later, in instructing the jury as to the plaintiffs' burden in this regard, the trial court further instructed the jury:

> The court has ruled as a matter of law that the [option] violated the Rule against Perpetuities and there is no public policy reason for not applying the rule.

This latter instruction states, unequivocally, that, in drafting the option contract, defendants committed an error. When read in conjunction with the former instruction, these directives indicate that the error is significant in proving the plaintiffs' "case within a case."

Moreover, the transcript discloses that extensive reference was made to the option's "unenforceability" by both the trial court and plaintiffs' counsel. Indeed, as pointed out by defendants in their brief, mention of this matter was made "10 times by the court, 56 times by the [plaintiffs'] counsel and 7 times by witnesses."

■ Although oftentimes these references were couched in the broader claim that

defendants had not been "reasonably careful" in drafting the option, the trial court's erroneous ruling, nonetheless, as evidenced above, pervaded the trial proceedings and, most critically, influenced the instructions given to the jury. Accordingly, we conclude that defendants are entitled to a new trial on plaintiffs' claim of legal malpractice.

Defendants argue, however, that if the option is valid and enforceable, there can be no malpractice claim as a matter of law, thus entitling them to entry of judgment in their favor. We disagree.

■ An attorney owes a duty to his client to employ that degree of knowledge, skill, and judgment ordinarily possessed by members of the legal profession in carrying out the services for his client. *Myers v. Beem*, 712 P.2d 1092 (Colo.App.1985). One of these obligations is anticipating *reasonably foreseeable risks. Pacelli v. Kloppenberg*, 65 Ill.App.3d 150, 22 Ill.Dec. 250, 382 N.E.2d 570 (1978).

Thus, although we hold here that the option did not violate the Rule against Perpetuities, the question remains whether defendants, as reasonably prudent attorneys, should have foreseen that the option, as drafted, was likely to result in litigation and whether other attorneys, in similar circumstances, would have taken steps to prevent such a result.

Plaintiffs argued at trial, and presented expert testimony in support of their assertion, that the principal negligence of defendants was their not protecting plaintiffs from loss by failing to research and analyze the Rule's applicability in the option, to recognize the likelihood that a good faith dispute could occur over the enforceability of the option because of the Rule, and to take the simple step of either adding a time limitation or "savings clause" or recommending the deletion of the provision that made the option binding on heirs, successors, and assigns.

Bruce Buell testified that he had given no specific consideration to the Rule in drafting the Letter Agreement. Nor did he perform any legal research, consider the

choice of law, consult with experts, or even consult with other members of his own firm on the question of whether the Rule could apply to the option. He concluded that he had no duty to do any of these things because he "was an experienced business transactions lawyer" who "knew the rule against perpetuities" and "knew when it applied," and could "spot issues like that." As a result, plaintiffs argue, Buell did not advise his clients of the real likelihood that a good faith dispute could arise over the enforceability of the option under the Rule.

■ On the issue of defendant's negligence, one expert attorney-witness testified that a reasonable attorney would have no reason to include a savings clause in the option and concluded that defendants met the standard of care in drafting it. However, conflicting testimony was offered by two other attorney-experts who testified that defendants had failed to meet the standard of care and should have considered the possibility that the Rule might apply to the option and should have protected it against a Rule challenge.

Perhaps the strongest testimony on this issue was that of defendant's own attorney-expert. On cross-examination, he unequivocally testified that, in his opinion, an attorney would be guilty of malpractice if he: (a) did not research the issue of the Rule in the context of this transaction, (b) failed to consider the potential for a dispute over the applicability of the Rule to the option, and (c) failed to utilize a savings clause to protect against that potential dispute.

Thus, although there was a conflict in the expert testimony as to attorney negligence in drafting the option, no witness disagreed with the premise that the option would have been protected from any Rule dispute if defendants had considered the Rule, had recognized the clear potential for dispute, and had either included a savings clause or excluded the language making the option binding on heirs, successors, and assigns.

In short, resolution of the Rule of Perpetuities issue does not conclusively resolve the issue of whether defendants met the applicable standard of care in preparing the option contract. Hence, we reject defendant's argument that judgment be entered in their favor.

## II.

In light of our resolution of the foregoing issue, it is unnecessary for us to address either defendants' remaining contention regarding prejudgment interest or plaintiffs' contention on cross-appeal regarding costs.

The judgment is reversed, and the cause is remanded for a new trial on plaintiffs' claims for legal malpractice consistent with the views expressed in this opinion.

TURSI and PLANK, JJ., concur.