**Affirmed in Part, Reversed and Remanded in Part, and Majority and Dissenting Opinions filed April 9, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00943-CV

---

## JON T. NEUBAUM AND BARBARA NEUBAUM, Appellants

### V.

## BRENTON M. STANFIELD, THOMAS P. STONE, STONE & ASSOCIATES, LLP, & JIMMY VAN KNIGHTON, II, Appellees

---

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Court Cause No. 12-04-03663-CV**

---

# MAJORITY OPINION

This appeal arises from a lawyer-client dispute. Clients sued lawyers and the law firm at which they worked, alleging various acts of negligence in representing the clients in a lawsuit, as well as alleged breaches of fiduciary duty. The trial court granted the lawyers' motion for a traditional summary judgment.

We affirm as to the claims for breach of fiduciary duty, and we sever, reverse, and remand the negligence claims.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Appellants/plaintiffs Jon T. Neubaum and Barbara Neubaum brought suit against three lawyers, alleging negligence in their representation of the Neubaums in a prior lawsuit in which the Buck Glove Company sued the Neubaums asserting usury claims (hereinafter the "Usury Lawsuit"). *See Neubaum v. Buck Glove Co.*, 302 S.W.3d 912, 916 (Tex. App.—Beaumont 2009, pet. denied). According to their live pleading, the Neubaums, after being served in the Usury Lawsuit, conferred with appellee Thomas P. Stone of Stone & Associates, L.L.P., an attorney who had represented them for several years in other matters. Stone and appellee Brenton M. Stanfield undertook to represent the Neubaums in the Usury Lawsuit.

The Neubaums counterclaimed against Buck Glove Company and asserted third-party claims against E.L. "Buck" Hord and Kathie Hord. Following a jury trial, the trial court in the Usury Lawsuit rendered judgment in favor of Buck Glove Company for more than $3.9 million in actual damages, as well as attorney's fees. The trial court in the Usury Lawsuit also rendered judgment in favor of the Neubaums in the amount of approximately $151,000 on their counterclaim for money had and received. The Neubaums retained new lead counsel for an appeal from the judgment. The Ninth Court of Appeals concluded that the trial evidence was legally insufficient to support the jury's finding that the Neubaums loaned money to Buck Glove Company through an agent. That appellate court reversed the trial court's judgment as to the usury claim and rendered judgment that Buck Glove Company take nothing. *See id.* at 920.

2

The Neubaums filed suit against appellees/defendants Brenton M. Stanfield, Thomas P. Stone, Jimmy Van Knighton II, and Stone & Associates, L.L.P. (collectively hereinafter the "Stone Parties") asserting various negligence claims and breach-of-fiduciary-duty claims. The Stone Parties filed a motion seeking a traditional summary judgment on the following grounds: (1) the Neubaums impermissibly fractured negligence claims into breach-of-fiduciary-duty claims and any claims the Neubaums arguably have against the Stone Parties sound only in negligence; (2) as a matter of law, the Stone Parties' allegedly actionable conduct did not proximately cause any damage to the Neubaums; (3) the Stone Parties cannot be held liable for an error committed by the trial court in the Usury Lawsuit; (4) as a matter of law, the Neubaums were not damaged by the failure to obtain a judgment against Buck Hord because the judgment against the Buck Glove Company may be enforced against Buck Hord; (5) to the extent the Neubaums complain about prior asset-preservation work performed by Van Knighton, Van Knighton's conduct did not cause the Neubaums any damage and any such claim is barred by the statute of limitations. The trial court granted the Stone Parties' motion and rendered a final summary judgment as to all of the Neubaums' claims.[1]

## II. ANALYSIS

On appeal, the Neubaums assert that the trial court erred in granting summary judgment in favor of the Stone Parties. The Stone Parties filed a traditional summary-judgment motion. In a traditional motion for summary

---

[1] The Supreme Court of Texas transferred today's case from the Ninth Court of Appeals to this court. In cases transferred by the high court from one court of appeals to another, the transferee court must decide the case in accordance with the precedent of the transferor court under principles of stare decisis if the transferee court's decision otherwise would have been inconsistent with the precedent of the transferor court. Tex. R. App. P. 41.3.

judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000).

## A. Did the Neubaums impermissibly fracture negligence claims into breach-of-fiduciary-duty claims?

In their first summary-judgment ground, the Stone Parties asserted that the Neubaums impermissibly fractured negligence claims into breach-of-fiduciary-duty claims and that any claims the Neubaums arguably have against the Stone Parties sound only in negligence. When deciding whether an allegation against an attorney states a claim sounding in negligence or some other claim, we are not bound by the client's characterization of the pleadings. *See Haase v. Abraham, Watkins, Nichols, Sorrels, Agosto, & Friend*, 404 S.W.3d 75, 82 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The rule against fracturing a negligence claim

4

prevents legal-malpractice plaintiffs from opportunistically transforming a claim that sounds only in negligence into some other claim. *See Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 189 (Tex. App.—Houston [14th Dist.] 2002, no pet.). If the gist of the client's complaint is that the attorney did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess, then that complaint should be pursued as a negligence claim, rather than some other claim.[2] *See id.* If, however, the client's complaint is more appropriately classified as another claim, for example, fraud, a violation of the Texas Deceptive Trade Practices Act, breach of fiduciary duty, or breach of contract, then the client can assert a claim other than negligence. *See Haase*, 404 S.W.3d at 82–83; *Deutsch*, 97 S.W.3d at 189.

Liberally construing the Neubaums' live petition,[3] the Neubaums alleged that the Stone Parties violated their respective fiduciary duties to the Neubaums by engaging in the following conduct: (1) failing to advise the Neubaums of the damages sought against them in the Usury Lawsuit, (2) failing to advise the Neubaums of Stanfield's lack of competence to handle the Usury Lawsuit, (3) failing to advise the Neubaums that Stanfield was not being supervised by more experienced counsel, and (4) failing to "pull" Stanfield from the Usury Lawsuit.[4]

---

[2] To avoid confusion, in this opinion a claim that the attorney did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess is referred to as a negligence claim rather than as a legal-malpractice claim.. *See Deutsch*, 97 S.W.3d at 184, n.1.

[3] Because the trial court sustained no special exceptions against the petition, this court must construe that pleading liberally in the Neubaums' favor to include all claims that reasonably may be inferred from the language used in the pleading. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000).

[4] The Neubaums sought both damages and fee forfeiture.

Though an alleged failure to disclose matters regarding an alleged conflict of interest may be the basis of an independent claim for breach of fiduciary duty, the Neubaums do not allege that the Stone Parties failed to disclose a conflict of interest or matters related thereto. *See McInnis v. Mallia*, No. 14-08-00931-CV, 2011 WL 782229, at *7 (Tex. App.—Houston [14th Dist.] Mar. 8, 2011, pet. denied); *Deutsch*, 97 S.W.3d at 189. After reviewing the Neubaums' allegations regarding the Stone Parties' alleged breaches of fiduciary duty, we conclude that the gist of each of these allegations is that the Stone Parties did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess. *See McInnis*, 2011 WL 782229, at *7; *Deutsch*, 97 S.W.3d at 189–90. Therefore, these allegations are to be pursued only as negligence claims; the Neubaums impermissibly fractured their negligence claims by asserting these complaints as breach-of-fiduciary-duty allegations. *See McInnis*, 2011 WL 782229, at *7; *Deutsch*, 97 S.W.3d at 189–90. Accordingly, the trial court did not err in granting summary judgment as to the Neubaums' breach-of-fiduciary-duty claims.

**B. Did the trial court err in granting summary judgment as to the Neubaums' negligence claims regarding the Buck Glove Company's status as an assumed name of E.L. "Buck" Hord?**

In their petition, the Neubaums alleged that the Stone Parties' negligence caused them damage when they obtained a judgment on the Neubaums' money-had-and-received claim against only the Buck Glove Company. The Neubaums allege that Buck Hord does business as the Buck Glove Company, which is only his assumed name. According to the Neubaums, because the Stone Parties obtained a judgment against only the Buck Glove Company, the judgment is "worthless" and "uncollectible" because it was rendered against a "non-existent entity" rather

than against "Buck Hord" or against "Buck Hord doing business as the Buck Glove Company." In their summary-judgment motion, the Stone Parties asserted that, as a matter of law, the Neubaums were not damaged by the failure to obtain a judgment against Buck Hord because the judgment against the Buck Glove Company may be enforced against Buck Hord.

If, as the Neubaums alleged, Buck Hord does business under the assumed name of "the Buck Glove Company," then Buck Hord and the Buck Glove Company are one and the same, and the judgment against the Buck Glove Company is a judgment against Buck Hord. *See Ideal Lease Serv., Inc. v. Amoco Prod. Co.,* 662 S.W.2d 951, 952 (Tex. 1983) (holding that a sole proprietorship is, in law and in fact, one and the same as the sole proprietor); *CA Partners v. Spears*, 274 S.W.3d 51, 62, n.6, 69 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (concluding that an assumed name under which an individual does business is a sole proprietorship, and that under Texas law, the sole proprietor and the sole proprietorship are one and the same person); *CU Lloyd's of Texas v. Hatfield,* 126 S.W.3d 679, 684–85 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (holding that Texas law regards a sole proprietorship and the sole proprietor as one and the same person); *Holberg & Co. v. Citizens Nat'l Assurance Co*., 856 S.W.2d 515, 517–18 (Tex. App.—Houston [1st Dist.] 1993, no writ) (stating that, when an individual is doing business under an assumed name, a judgment rendered against the unincorporated association is binding on the individual).

The Stone Parties cite two cases from the First Court of Appeals that contain statements to the effect that a judgment rendered against an assumed name is binding on the individual doing business under that name. *See Holberg & Co.*, 856 S.W.2d at 517–18; *Mustang Tractor & Equip. Co. v. Cornett*, 747 S.W.2d 33, 35

(Tex. App.—Houston [1st Dist.] 1988, no writ). The Neubaums correctly point out that these statements are obiter dicta and that in these cases the First Court of Appeals did not hold that a judgment creditor could enforce a judgment against an individual doing business under an assumed name even though the trial court rendered judgment only against the assumed name. *See Holberg & Co.*, 856 S.W.2d at 517–18; *Mustang Tractor & Equip. Co.*, 747 S.W.2d at 35. The parties have not cited, and research has not revealed any cases containing a holding on this issue. Nonetheless, under the noted binding precedent, an individual who does business under an assumed name is one and the same as the assumed name. *See Ideal Lease Serv., Inc.*, 662 S.W.2d at 952; *CA Partners*, 274 S.W.3d at 62, n.6; *CU Lloyd's of Texas*, 126 S.W.3d at 684–85. Based on this precedent, we conclude that, as a matter of law, the Neubaums may not recover damages under their theory that the judgment they obtained is "worthless" and "uncollectible" because it was rendered against only the Buck Glove Company. *See Ideal Lease Serv., Inc.*, 662 S.W.2d at 952; *CA Partners*, 274 S.W.3d at 62, n.6; *CU Lloyd's of Texas*, 126 S.W.3d at 684–85; *Holberg & Co.*, 856 S.W.2d at 517–18.

**C. Did the trial court err in granting summary judgment as to the Neubaums' negligence claims?**

The Neubaums assert that the Stone Parties are all liable for Stanfield's allegedly negligent conduct. Liberally construing the Neubaums' live petition,[5] the Neubaums asserted that Stanfield engaged in the following conduct alleged to be negligent:

- undertaking to represent the Neubaums in the Usury Lawsuit even

---

[5] As with the prior claims, because the trial court sustained no special exceptions against the petition, we construe that pleading liberally in the Neubaums' favor to include all claims that reasonably may be inferred from the language used in the pleading. *See Auld*, 34 S.W.3d at 897.

though Stanfield was incompetent to do so,

- failing to timely conduct discovery,

- failing to request a continuance of the trial setting in light of incomplete discovery,

- failing to advise the court that the Buck Glove Company was nothing other than an assumed name of E.L. "Buck" Hord,

- submitting a liability question against a non-existing entity, the Buck Glove Company[6]

- failing to submit the Neubaums' usury "cure letter" into evidence,

- failing to submit an issue to the jury on the Neubaums' usury "cure letter,"

- failing to advise the Neubaums of the damages being sought until days before trial,

- failing to object to the plaintiffs' expert,

- failing to engage an expert for the Neubaums until after trial,

- failing to use a witness to demonstrate that the Buck Glove Company, E.L. "Buck" Hord, and Kathie Hord were engaged in a "Ponzi scheme,"

- failing to move for a directed verdict when the plaintiffs in the Usury Lawsuit rested their case-in-chief and at the close of the evidence,

- permitting the Buck Glove Company to reopen the evidence after resting to call its expert witness, and

- pursuing an adversary proceeding against a debtor in bankruptcy in the incorrect belief that this action would make it easier to win the Usury Lawsuit.

The Neubaums also asserted that Stone engaged in the following conduct

---

[6] In the previous section, we concluded that, as a matter of law, the Neubaums may not recover damages under their theory that the judgment they obtained is "worthless" and "uncollectible" because it was rendered only against the Buck Glove Company. Nonetheless, the Neubaums have pleaded that all of the Stone Parties' alleged negligence caused all of their other alleged damages, so the negligence alleged in this item and in the previous item is still at issue as to these other alleged damages.

alleged to constitute negligence:

- failing to properly supervise Stanfield,

- failing to timely conduct discovery,

- failing to request a continuance of the trial setting in light of incomplete discovery,

- failing to advise the court that the Buck Glove Company was nothing other than an assumed name of E.L. "Buck" Hord, and

- failing to advise the Neubaums of the damages being sought.[7]

The Neubaums alleged that the Stone Parties' conduct, described above, caused the following alleged damages:

- more than $150,000 in attorney's fees that the Neubaums paid for appellate work in the Usury Lawsuit,

- more than $16,000 in attorney's fees that the Neubaums paid to an asset-protection lawyer, whose fees would not have been incurred but for the Stone Parties' negligence,

- more than $15,000 in expert fees incurred by the Neubaums after the jury verdict in the Usury Lawsuit, and

- more than $19,000 in fees paid to a bankruptcy attorney relating to a bankruptcy proceeding.[8]

(hereinafter collectively the "Alleged Damages").[9]

As movants for a traditional summary judgment, the Stone Parties had the

---

[7] The Neubaums also alleged that Van Knighton negligently failed to properly supervise Stanfield.

[8] The Neubaums also requested damages based on the allegedly worthless judgment against the Buck Glove Company. In the previous section, we concluded that, as a matter of law, the Neubaums may not recover damages under their theory that the judgment they obtained is "worthless" because it cannot be collected against Buck Hord. The Neubaums also sought exemplary damages and disgorgement or fee forfeiture.

[9] None of the fees that are part of the Alleged Damages are fees related to work performed by the Stone Parties.

burden of submitting summary-judgment evidence that conclusively proved their entitlement to judgment. *See Willrich*, 28 S.W.3d at 23; *Buffington v. Sharp*, 440 S.W.3d 677, 683–84 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). In their summary-judgment motion, the Stone Parties did not challenge the Neubaums' allegations of the above-stated conduct or of the above-referenced damages. As grounds for a traditional summary judgment, the Stone Parties asserted that, as a matter of law, their allegedly actionable conduct did not proximately cause any damage to the Neubaums, and that the Stone Parties cannot be held liable for an error committed by the trial court in the Usury Lawsuit. In support of both of these grounds, the Stone Parties sought to negate, as a matter of law, the essential element of proximate cause. Thus, in both grounds, the Stone Parties raised the issue of whether their alleged negligence proximately caused the Neubaums' Alleged Damages.

A litigation attorney's negligence causes damage to a client if the result the client would have obtained with competent counsel is more favorable to the client than the result actually obtained. *See Elizondo v. Krist*, 415 S.W.3d 259, 263 (Tex. 2013). Under their second and third summary-judgment grounds respectively, the Stone Parties had the burden of proving as a matter of law that (1) if a reasonably prudent attorney had represented the Neubaums in the Usury Lawsuit, the Neubaums would not have obtained a more favorable result than the result they actually obtained; and (2) the Alleged Damages were caused by the erroneous rulings of the trial court in the Usury Lawsuit rather than by any of the alleged negligence of the Stone Parties. *See Elizondo*, 415 S.W.3d at 263.

The summary-judgment evidence does not prove as a matter of law that, if a reasonably prudent attorney had represented the Neubaums in the Usury Lawsuit,

the aggregate amount of the Neubaums' appellate attorney's fees, asset-protection attorney's fees, expert fees, and attorney's fees related to the bankruptcy proceeding would not have been less than the actual aggregate amount of these fees.[10]

The Neubaums asserted negligence based on Stanfield's failure to offer into evidence at trial the "cure letter" that allegedly was the basis of the Neubaums' alleged usury defense under Finance Code section 305.006(c). *See* Tex. Fin. Code Ann § 305.006(c) (West, Westlaw through 2013 3d C.S.). The trial court in the Usury Lawsuit rejected a motion for judgment notwithstanding the verdict based on this defense asserted by Stanfield on behalf of the Neubaums. This ruling was not erroneous because a motion for judgment notwithstanding the verdict must be based on the *trial* evidence, yet Stanfield relied on a *pre-trial* filing — a copy of the "cure letter" that had been filed with the court as evidence in support of a summary-judgment motion. *See Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009) (stating that motion for judgment notwithstanding the jury's verdict is based on the evidence presented at trial); *Celadon Trucking Servs. v. Titan Textile Co.*, 130 S.W.3d 301, 307 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (holding that, following trial on the merits, summary-judgment evidence not admitted into evidence at trial may not be considered as evidence in support of grounds for reversing the trial court's final judgment, as opposed to reviewing a pre-trial granting of a motion for partial summary judgment). If the "cure letter" had been admitted into evidence at trial, would the Neubaums have been entitled to

---

[10] Though the Neubaums seek the full amount of these fees as damages, they also argue, in the alternative, that they are entitled to recover the difference between the fees they actually incurred and fees they would have incurred if there had been no attorney negligence.

a take-nothing judgment against the Buck Glove Company, notwithstanding the verdict, based on this alleged defense and letter? The summary-judgment evidence does not address this issue.

The Neubaums assert that Stanfield was negligent in pursuing an adversary proceeding against a debtor in bankruptcy in the incorrect belief that this action would make it easier to win the Usury Lawsuit. Presuming that this action was negligent and that a reasonably prudent attorney would not have pursued the bankruptcy matter, did this negligence cause the Neubaums damages based on the more than $19,000 in bankruptcy fees that they incurred? The summary-judgment evidence does not address this issue.

The summary-judgment evidence does not conclusively prove that (1) if a reasonably prudent attorney had represented the Neubaums in the Usury Lawsuit, the Neubaums would not have obtained a more favorable result than the result they actually obtained; or (2) the Alleged Damages were caused by the erroneous rulings of the trial court in the Usury Lawsuit rather than by any of the alleged negligence of the Stone Parties. These reasons, while sufficient to defeat summary judgment on the Neubaums' negligence claims, are not the only reasons the summary judgment on the negligence claims fail.

The Stone Parties raised the issue of whether their alleged negligence proximately caused the Neubaums' Alleged Damages. Yet, conspicuously absent from the summary-judgment record is expert testimony essential to prove lack of causation. Though the Neubaums voice no complaint about the lack of expert testimony, their challenge to the sufficiency of the trial court's summary judgment compels us to consider it.

In the context of adjudicating a negligence claim by a client against a

13

litigation attorney, expert testimony is necessary as to proximate cause if it is beyond the trier of fact's common understanding to determine this issue. *See Buffington*, 440 S.W.3d at 683–84; *Cooper v. Harris*, 329 S.W.3d 898, 902–03 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). As explained below, in today's case, determinations regarding the legal and procedural intricacies surrounding the fallout from conduct of litigation attorneys are issues for experts in the legal realm. Given the technical nature of these matters, they are outside the grasp of laymen and beyond the trier-of-fact's common understanding. In the context of today's case, this threshold determination drives the causation analysis, even in the absence of a specific complaint about the lack of expert testimony. Because expert testimony of causation is an essential ingredient of the necessary proof of lack of causation, the Neubaums' failure to complain about the lack of expert testimony does not change the causation analysis or eliminate this court's obligation to assess the proof of it as part of the Stone Parties' summary-judgment causation challenge. We could hardly assess causation without taking notice of the absence of lack-of-causation proof. So, in the unusual context of this case, the two inquiries—whether the summary-judgment evidence conclusively negates causation and whether the absence of expert testimony precludes the evidence from negating causation—puts the court to essentially the same assessment. Thus, in assessing the Stone Parties' entitlement to summary judgment based on lack of causation, we necessarily consider whether the summary-judgment record contains the necessary proof of it.

It is beyond the trier of fact's common understanding to determine: (1) whether, if a reasonably prudent attorney had represented the Neubaums in the Usury Lawsuit, the Neubaums would not have obtained a more favorable result than the result they actually obtained, or (2) whether the Alleged Damages were

14

caused by the erroneous rulings of the trial court in the Usury Lawsuit rather than by any of the alleged negligence of the Stone Parties. *See Alexander v. Turtur & Associates, Inc.,* 146 S.W.3d 113, 119–20 (Tex. 2004) (holding expert testimony was necessary for causation element of negligence claim against litigation attorney); *Buffington*, 440 S.W.3d at 683–84 (holding defendant litigation attorney failed to show entitlement to traditional summary judgment as to negligence claims against him in case in which attorney failed to submit any expert testimony on negligence or causation); *Cooper*, 329 S.W.3d at 902–03 (holding expert testimony was necessary for causation element of negligence claim against litigation attorney); *Primis Corp. v. Milledge*, No. 14-08-00753-CV, 2010 WL 2103936, at *3 (Tex. App.—Houston [14th Dist.] May 27, 2010, no pet.) (holding expert testimony was necessary for causation element of negligence claim against litigation attorney) (mem. op.); *Arce v. Burrow,* 958 S.W.2d 239, 251–52 (Tex. App.—Houston [14th Dist.] 1997) (holding expert testimony was necessary for causation issue regarding settlements of personal-injury and wrongful-death cases in negligence claims against litigation attorneys), *aff'd in part, rev'd in part on other grounds,* 997 S.W.2d 229 (Tex. 1999); *Saldana-Fountain v. Chavez Law Firm*, 450 S.W.3d 913, 916–18 (Tex. App.—El Paso 2014, no pet. h.) (holding that, even if expert testimony were not required to show that litigation attorney was negligent in failing to file suit within the statute-of-limitations period, expert testimony still was necessary to prove that this alleged negligence proximately caused damage to the plaintiff). Therefore, expert testimony was necessary to prove that the Stone Parties were entitled to summary judgment based on either their second or third ground. *See Alexander,* 146 S.W.3d at 119–20; *Buffington*, 440 S.W.3d at 683–84; *Cooper*, 329 S.W.3d at 902–03; *Primis Corp.*, 2010 WL 2103936, at *3; *Arce,* 958 S.W.2d at 251–52; *Saldana-Fountain*, 450 S.W.3d at

916–18.

The Stone Parties did not submit any testimony from a retained expert in support of their motion for summary judgment. The only evidence the Stone Parties submitted that arguably might be expert testimony is an affidavit from counsel for the Buck Glove Company in the Usury Lawsuit. The trial court sustained objections asserted by the Neubaums against most of the statements in this affidavit. On appeal, the Stone Parties assert that the trial court erred in sustaining these objections. We presume, without deciding, that (1) the Stone Parties may challenge these evidentiary rulings in this appeal; (2) the trial court erred in sustaining each of the objections to this affidavit; and (3) this attorney's affidavit qualifies as expert testimony rather than fact-witness testimony. Even under these presumptions, the attorney's only non-conclusory statements[11] relevant to causation support the proposition that the Buck Glove Company would have appealed even if the jury had rendered its verdict in favor of the Neubaums. This testimony does not address whether, but for the alleged negligence of the Stone Parties, the Neubaums would have incurred the same attorney's fees and expert fees. Likewise, this testimony does not address whether the Alleged Damages were caused by the erroneous rulings of the trial court in the Usury Lawsuit rather than by any of the alleged negligence of the Stone Parties. The Stone Parties did not submit expert testimony showing that they were entitled to summary judgment based on either their second or third summary-judgment ground.

Because the Stone Parties moved only for a traditional summary judgment, they had the burden of proving as a matter of law (1) that none of the Stone Parties' allegedly negligent conduct proximately caused the Neubaums' Alleged

---

[11] The Neubaums did not object in the trial court that any of these statements were conclusory.

16

Damages, or (2) that the Alleged Damages were caused by the erroneous rulings of the trial court in the Usury Lawsuit rather than by any of the alleged negligence of the Stone Parties. *See Willrich*, 28 S.W.3d at 23. Though expert testimony was required to prove both of these matters, the Stone Parties did not submit any expert testimony proving either one. *See Buffington*, 440 S.W.3d at 683–84; *Cooper*, 329 S.W.3d at 902–03.

The Stone Parties failed to submit evidence proving as a matter of law that they were entitled to judgment based on their second or third summary-judgment ground. Because the Stone Parties did not carry this burden as to their second and third grounds, the Neubaums were not required to respond or raise any fact issue in their response in this regard. *See Willrich*, 28 S.W.3d at 23. The trial court erred in granting summary judgment as to the Neubaums' negligence claims.[12] *See Willrich*, 28 S.W.3d at 23; *Buffington*, 440 S.W.3d at 683–84; *Cooper*, 329 S.W.3d at 902–03.[13]

---

[12] We need not and do not decide (1) whether the trial court erred in sustaining the Neubaums' objections to the affidavit of the attorney who represented the Buck Glove Company in the Usury Lawsuit, as the Stone Parties argue, or (2) whether the trial court erred in striking the affidavits of three individuals who served as jurors in the Usury Lawsuit, as the Neubaums argue.

[13] The Stone Parties also asserted as a summary-judgment ground that, to the extent the Neubaums complain about prior asset-preservation work performed by Van Knighton, Van Knighton's conduct did not cause the Neubaums any damage and any claim in this regard is barred by the statute of limitations. Even under a liberal construction of the Neubaums' live pleading, we conclude that they are not asserting any claim based on prior asset-preservation work performed by Van Knighton. *SmithKline Beecham Corp. v. Doe,* 903 S.W.2d 347, 354–55 (Tex. 1995). And, the Neubaums acknowledge that they are not asserting any claims based on this work. Therefore, this summary-judgment ground is not a basis for affirming any part of the trial court's summary judgment.

### III. CONCLUSION

The Neubaums' allegations regarding alleged breaches of fiduciary duty should be pursued only as negligence claims; the Neubaums impermissibly fractured their negligence claims by asserting these complaints as breach-of-fiduciary-duty allegations. Therefore, the trial court did not err in granting summary judgment as to the Neubaums' breach-of-fiduciary-duty claims. As a matter of law, the Neubaums may not recover damages under their theory that the judgment they obtained is "worthless" and "uncollectible" because it was rendered against only the Buck Glove Company.

The Stone Parties failed to submit evidence proving as a matter of law that they were entitled to judgment based on either their second or their third summary-judgment grounds. Determining whether the Stone Parties' allegedly negligent conduct proximately caused the Alleged Damages was beyond the trier of fact's common understanding. Likewise, determining whether the Alleged Damages were caused by the erroneous rulings of the trial court in the Usury Lawsuit rather than by the alleged negligence of the Stone Parties was beyond the trier of fact's common understanding. Therefore, expert testimony was necessary for the Stone Parties to prove that they were entitled to summary judgment based on their second and third ground. The trial court erred in granting summary judgment as to the Neubaums' negligence claims.[14]

We affirm the trial court's judgment as to the claims for breach of fiduciary duty. We reverse the judgment as to the Neubaums' negligence claims, and we

---

[14] We need not and do not address whether this court should adopt the *per se* judicial-error rule advocated by the Stone Parties.

sever and remand the negligence claims to the trial court for further proceedings consistent with this opinion.


/s/    Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Donovan and Brown. (Brown, J., dissenting).