Opinion by JUDGE BERGER
¶ 1 In this legal malpractice case, defendant, Otten Johnson Robinson Neff and Ragonetti PC (Law Firm), appeals the judgment entered on a jury verdict in favor of plaintiff, Boulders at Escalante LLC (Developer). We affirm the judgment to the extent that the damages were based on the legal fees and related expenses Developer incurred that it would not have incurred but for Law Firm's negligence, and we remand for further proceedings to determine the amount of those damages. However, regarding the principal issues on appeal, we agree with Law Firm that, to the extent that the damages award was based on Developer's claimed business losses, the evidence was insufficient as a matter of law to prove that Law Firm's negligence was the legal cause of those losses. We therefore reverse the judgment in part.
I. Relevant Facts and Procedural History
A. Law Firm's Representation of Developer
¶ 2 Developer was a real estate development company formed to develop townhomes on a lot owned by one of the company's principals in a subdivision in Durango. Law Firm was hired to represent Developer in a lawsuit filed against it by its general contractor to foreclose the contractor's mechanic's lien.
¶ 3 On Developer's behalf, Law Firm filed several compulsory counterclaims against the contractor for breach of contract and negligence. Developer was concerned that the contractor would be unable to pay a judgment if Developer succeeded on the counterclaims. It asked Law Firm to review the insurance policies it had obtained for the project, under which both Developer and the contractor were insured, to determine whether the policies would pay a judgment in favor of Developer and against the contractor.
¶ 4 In October 2006, Law Firm told Developer that there was $2 to $4 million of coverage under the policies to pay a judgment against the contractor.[1] But in April 2009, after Law Firm withdrew from the lawsuit and Developer obtained new representation, Developer learned that the policies contained a "cross-liability exclusion." The cross-liability exclusion precluded one named insured from recovering insurance proceeds for a claim against another named insured. Accordingly, *756 the insurance policies would not pay a judgment against the contractor if Developer succeeded on its counterclaims.
¶ 5 In 2012, Developer entered into a settlement agreement with the contractor under which both parties agreed to dismiss the claims against the other with prejudice, without payment by either party.
B. Developer's Legal Malpractice Action against Law Firm
¶ 6 In 2011, Developer filed this action against Law Firm. Developer asserted that Law Firm was negligent in incorrectly advising it that there was $2 to $4 million in insurance coverage to pay a potential judgment against the contractor. Developer's theory of liability was based upon its principals' testimony at trial that, in reliance on Law Firm's advice about the insurance coverage, Developer made a series of decisions that resulted in extensive losses (including legal fees and related expenses for continuing to litigate the counterclaims against the contractor).
¶ 7 The principals testified that in 2006 and early 2007, Developer had sold twenty townhomes (units) at a loss of $50,000 each. It had nine other units under contract for a price that also would have resulted in a $50,000 loss on each, and eight units that had not yet been sold. A new appraisal on those seventeen remaining units appraised their value substantially higher than the contract prices for the nine units or the prices at which the other twenty units had been sold.
¶ 8 According to the principals' testimony, under the belief that there was $2 to $4 million in insurance coverage to pay a potential judgment against the contractor, in 2007, Developer decided to cancel the nine existing contracts and pull all seventeen remaining units off the market. To cancel two of the existing contracts, Developer had to buy out the contracts for $30,000 each.
¶ 9 The principals testified that by promising its principal construction lender 60% of the proceeds of any judgment against the contractor, Developer was able to extend the maturity date on the loan, lower the interest rate, and obtain additional funds. Developer then leased the nine units that had been under contract and finished the remaining work on the other eight units. The principals testified that they believed that when they put the units back on the market, they would sell for a higher price than the prices at which the nine units had been under contract and the twenty initial units had sold, thus reducing the losses sustained by Developer.[2]
¶ 10 However, by the time Developer was able to put the units back on the market in 2008, the real estate market in Durango and elsewhere had collapsed. Accordingly, although all of the units had sold by the time of trial, they had sold for much less than their appraised value and many had sold for less than the contract prices of the nine units previously under contract or the selling prices of the initial twenty units.
¶ 11 Developer's principals testified that had Law Firm correctly advised them in 2006 about the cross-liability exclusion, and thus had they known in 2007 that there was no insurance coverage to pay a judgment against the contractor, they would not have made the same decisions. Rather, they would have sold the nine units under contract at the contract prices, and they would have sold the remaining eight units by the end of 2007 for whatever prices they could get. The principals testified that Developer then would have paid off what obligations it could and wound down its operations.
¶ 12 The principals also testified that beginning November 1, 2006 (after Developer received the incorrect insurance coverage advice from Law Firm), and continuing until the settlement with the contractor in 2012, Developer incurred hundreds of thousands of dollars in legal fees and related expenses in litigating the counterclaims against the contractor. They testified that Developer would not have incurred those legal expenses had they known that there was no insurance coverage *757 to pay a judgment against the contractor on the counterclaims.
¶ 13 Developer hired a forensic accountant to determine what losses it had suffered by relying on Law Firm's incorrect advice about the insurance coverage and thus pursuing the course of action that it did. The accountant testified at trial that he based his calculations on the assumption that but for Law Firm's advice, Developer would have sold all thirty-seven units by the end of 2007 and wound down. He testified that had Developer pursued that course of action, the project would have ended with Developer sustaining a $1.7 million loss on the project. However, by taking the path that it actually took, the accountant testified that Developer actually sustained a project loss of almost $5 million. Thus, according to the accountant, not including the legal expenses Developer incurred in pursuing its counterclaims, Developer suffered a financial loss of almost $3.2 million that it would not have sustained but for Law Firm's advice.
¶ 14 Law Firm moved for a directed verdict at the close of Developer's case-in-chief and renewed the motion at the close of evidence. Law Firm argued that Developer failed to prove an essential element of a legal malpractice case-that the outcome of the underlying litigation between Developer and the contractor would have been more favorable for Developer but for Law Firm's negligent advice (the "case within a case" requirement). Law Firm also argued that Developer failed to establish causation; that the case was not filed within the statute of limitations; and that Developer's theory of damages was not legally cognizable. The trial court denied the motions.
¶ 15 The jury found that Law Firm was negligent and that its negligence caused 82.5% of the damages suffered by Developer (with Developer 17.5% at fault). The jury determined that the total amount of Developer's damages was $3,287,379.59.
¶ 16 The trial court entered judgment for Developer for $2,712,079.91, plus pre- and post-judgment interest. The court later ordered prejudgment interest in the amount of $1,611,459.01.
¶ 17 Law Firm filed two motions for judgment notwithstanding the verdict and a motion for a new trial, arguing the same grounds it had raised in its motions for a directed verdict and that the damages award was excessive. The trial court denied the motions.
¶ 18 Law Firm appeals, arguing: (1) Developer's claim was barred by the statute of limitations; (2) Developer did not establish its claim as a matter of law because it did not prove a case within a case; (3) the evidence was insufficient as a matter of law to establish that Law Firm owed a duty to Developer regarding the advice given; (4) the evidence was insufficient as a matter of law to establish that Law Firm's incorrect advice caused Developer's losses; (5) Developer suffered no cognizable damages; and (6) the award of prejudgment interest was legally erroneous.
II. Standard of Review
¶ 19 We review de novo a trial court's rulings on motions for directed verdicts and judgments notwithstanding the verdict. Vaccaro v. Am. Family Ins. Grp., 2012 COA 9, ¶ 40, 275 P.3d 750. To the extent that such a motion concerned a question of fact, we consider whether the evidence, viewed in the light most favorable to the nonmoving party, compels the conclusion that reasonable jurors could not disagree and that no evidence or inference therefrom had been received at trial upon which a verdict against the moving party could be sustained. MDM Grp. Assocs., Inc. v. CX Reinsurance Co. Ltd, 165 P.3d 882, 885 (Colo.App.2007). To the extent that the motion involved the court's determination of a question of law, we review the court's determination de novo. Tricon Kent Co. v. Lafarge N. Am., Inc., 186 P.3d 155, 159 (Colo.App.2008).
III. Statute of Limitations
¶ 20 The statute of limitations bars legal malpractice actions based on negligence brought more than two years after the action accrues. § 13-80-102, C.R.S.2014; Morrison v. Goff, 91 P.3d 1050, 1052 (Colo.2004).
¶ 21 Developer filed this action against Law Firm on April 1, 2011. Law *758 Firm argues that Developer's claim indisputably accrued no later than February 2009, when Developer learned that Law Firm's advice regarding insurance coverage might be wrong and was incurring legal fees to obtain a separate opinion, and that therefore the claim is barred. We disagree.
¶ 22 A cause of action for negligence accrues on the date both the injury and its cause are known or should have been known to the plaintiff by the exercise of reasonable diligence. § 13-80-108(1), C.R.S.2014. Under this rule, an action in legal malpractice cases accrues when the plaintiff learns "facts that would put a reasonable person on notice of the general nature of damage and that the damage was caused by the wrongful conduct of an attorney." Morrison, 91 P.3d at 1053 (internal quotation marks omitted). This determination must be made on a case-by-case basis by examining each plaintiff's specific knowledge of the relevant underlying facts. Id. at 1056-57.
¶ 23 "The time when a plaintiff discovered, or through the use of reasonable diligence should have discovered, the negligent conduct is normally a question of fact which must be resolved by the trier of fact." Winkler v. Rocky Mountain Conf. of United Methodist Church, 923 P.2d 152, 158-59 (Colo.App.1995). Only "[i]f the undisputed fact[s] clearly show that a plaintiff discovered, or reasonably should have discovered, an attorney's negligent conduct as of a particular date, [may] the issue ... be decided as a matter of law." Palisades Nat'l Bank v. Williams, 816 P.2d 961, 963 (Colo.App.1991).
¶ 24 Law Firm argues that, at least by February 2009, Developer indisputably had notice that Law Firm's advice regarding the insurance coverage might be wrong. However, the evidence Law Firm contends supports this assertion does not definitively establish that Developer should have known at that time that there was no coverage. Rather, it shows that there were questions regarding coverage that Developer and its new counsel needed to resolve.
¶ 25 Developer also presented evidence that its principals were "shocked" when they were informed in April 2009 that there was no coverage. Additionally, the record does not clearly establish that Developer was incurring additional legal fees before April 2009 for the purpose of ameliorating Law Firm's negligent advice; the fees could have been incurred merely to obtain, on Law Firm's recommendation, a second opinion on the coverage issue.
¶ 26 Under these circumstances, the question of when Developer knew or should have known that the advice was incorrect and that it was injured by the incorrect advice was properly a question for the jury. We thus reject Law Firm's argument that Developer's claim is barred by the statute of limitations as a matter of law.
IV. Legal Malpractice
A. Law
¶ 27 To succeed on a legal malpractice claim founded in negligence, a plaintiff must establish that (1) an attorney owed a duty of care to the plaintiff; (2) the attorney breached that duty; (3) the breach proximately caused an injury to the plaintiff; and (4) damages resulted. Gibbons v. Ludlow, 2013 CO 49, ¶ 12, 304 P.3d 239 ; Bebo Constr. Co. v. Mattox & O'Brien, P.C., 990 P.2d 78, 83 (Colo.1999).
1. Duty and Breach
¶ 28 Both the existence and the scope of a tort duty are questions of law, Moore v. W. Forge Corp., 192 P.3d 427, 434 (Colo.App.2007), but whether a breach of duty has occurred is a question of fact, Perreira v. State, 768 P.2d 1198, 1220 (Colo.1989).
¶ 29 An attorney-client relationship gives rise to a duty owed by the attorney to the client. Mehaffy, Rider, Windholz & Wilson v. Cent. Bank Denver, N.A., 892 P.2d 230, 240-41 (Colo.1995). The "attorney owes to his [or her] client the duty to employ that degree of knowledge, skill, and judgment ordinarily possessed by members of the legal profession in carrying out the services for his [or her] client." Bebo Constr., 990 P.2d at 83 (internal quotation marks omitted). Failure to do so constitutes a breach of the attorney's duty of care to the client. Id.
*759 2. Causation
¶ 30 "[A] finding of negligence does not create liability on the part of a defendant unless that negligence is a proximate cause of the plaintiff's injury." City of Aurora v. Loveless, 639 P.2d 1061, 1063 (Colo.1981). Causation is a question of fact for the jury unless the facts are undisputed and reasonable minds could draw but one inference from them. Reigel v. SavaSeniorCare L.L.C., 292 P.3d 977, 985-96 (Colo.App.2011). Whether the trial court applied the correct test for causation is a legal question. Id. at 985.
¶ 31 Establishing whether a defendant's negligence caused a plaintiff's injury requires two separate determinations. See id. Before determining whether the defendant's negligence was the proximate (or "legal") cause of the plaintiff's injury, a determination of causation in fact (or "actual" cause) must be made. See id. ; Moore, 192 P.3d at 436.[3]
a. Causation in Fact and the Case Within a Case Requirement
¶ 32 The test for causation in fact is "the 'but for' test-whether, but for the alleged negligence, the harm would not have occurred." Reigel, 292 P.3d at 985. "The requirement of 'but for' causation is satisfied if the negligent conduct in a natural and continued sequence, unbroken by any efficient intervening cause, produce[s] the result complained of, and without which the result would not have occurred." Id. (internal quotation marks omitted).
¶ 33 A number of Colorado appellate court decisions have stated that for a plaintiff to prove causation in fact in a legal malpractice case, the plaintiff must prove a case within a case: the plaintiff must show that the claim underlying the malpractice action would have been successful but for the attorney's negligence. See, e.g., Gibbons, ¶ 16 ; Bebo Constr., 990 P.2d at 83 ; Bristol Co., LP v. Osman, 190 P.3d 752, 755 (Colo.App.2007) ; Luttgen v. Fischer, 107 P.3d 1152, 1154 (Colo.App.2005) ; Giron v. Koktavy, 124 P.3d 821, 823 (Colo.App.2005) ; Brown v. Silvern, 45 P.3d 749, 751 (Colo.App.2001) ; Fleming v. Lentz, Evans, & King, P.C., 873 P.2d 38, 40 (Colo.App.1994).
¶ 34 Based on this authority, Law Firm argues that a legal malpractice plaintiff always must prove a case within a case, by showing that the underlying case or transaction otherwise would have turned out more favorably to the plaintiff, to succeed on its claim. It contends that because Developer did not prove that, but for Law Firm's negligence, the underlying litigation would have turned out more favorably (which required establishing that Developer could have succeeded on its counterclaims), the trial court erred in denying Law Firm's motions for a directed verdict and judgment notwithstanding the verdict. Alternatively, Law Firm argues that it is entitled to a new trial because the court erroneously rejected its tendered instructions on the case within a case requirement.
¶ 35 We reject this argument and hold that not every legal malpractice case requires proof of a case within a case. We also conclude, as discussed in a later section of this opinion, that at least portions of the theory pleaded by Developer and tried to the jury did not require proof of a case within a case.
¶ 36 At least in a few Colorado cases, proof of a case within a case has been held not to be necessary to establish the legal malpractice claim at issue. See First Interstate Bank of Denver v. Berenbaum, 872 P.2d 1297 (Colo.App.1993) ; Temple Hoyne Buell Found. v. Holland & Hart, 851 P.2d 192 (Colo.App.1992).
¶ 37 For example, in Temple Hoyne Buell Foundation, 851 P.2d at 194, the defendant attorneys had drafted a contract for the plaintiffs that the other contracting party later asserted was unenforceable for violating the rule against perpetuities. The plaintiffs *760 ultimately settled their dispute with the other contracting party and filed a legal malpractice action against the attorneys for negligent drafting of the contract. Id. A division of this court held that the contract did not violate the rule against perpetuities. Id. at 198.
¶ 38 The attorneys argued that if the contract did not violate the rule against perpetuities, there could be no malpractice claim against them as a matter of law because, like Law Firm argues here, the plaintiffs could not prove a case within a case-that they would have obtained a better result in the underlying contract dispute but for the attorneys' negligence. See id. at 195, 198.
¶ 39 The division disagreed, explaining that one of the obligations an attorney owes his or her client is anticipating reasonably foreseeable risks. Id. at 198. Consequently, resolution of the rule against perpetuities issue did not conclusively resolve the question whether the attorneys met the applicable standard of care in drafting the contract. Id. The question remained whether, as reasonably prudent attorneys, they should have foreseen that the contract as drafted was likely to result in litigation and whether other attorneys in similar circumstances would have drafted the contract differently or taken other steps to prevent such a result. Id. at 198-99.
¶ 40 The division thus held that the attorneys could be liable, because of the unreasonable risk of litigation created by their negligence in drafting the contract, without the plaintiffs establishing that the result of the underlying contract dispute would have been different but for the attorneys' negligence. A similar result was reached in First Interstate Bank, 872 P.2d at 1299-1300. The holdings in Temple Hoyne Buell Foundation and First Interstate Bank are fundamentally inconsistent with Law Firm's argument that every legal malpractice plaintiff has to prove a case within a case to establish his or her claim.
¶ 41 Moreover, other Colorado decisions expressly contemplate that, depending on the circumstances of a particular case, proof of a case within a case may not be necessary. For instance, while requiring proof of a case within a case on the facts of the case at issue, some Colorado cases have indicated that proof of a case within a case is not required in all legal malpractice actions. Thus, in Allen v. Martin, 203 P.3d 546, 565-66 (Colo.App.2008), a division of this court stated that "[t]o establish causation, a plaintiff must show that but for the attorney's conduct, the injury would not have occurred. In many such cases, causation requires the plaintiff to establish the 'case within a case.' " (Emphasis added and citation omitted.) Similarly, in Miller v. Byrne, 916 P.2d 566, 579 (Colo.App.1995), a division of this court explained that "when an action for legal malpractice is predicated upon an error in handling an underlying matter, the claim has been characterized as a 'case within a case' requiring proof ... that the plaintiff should have been successful in the underlying action if the attorney performed properly." (Emphasis added.)
¶ 42 Other sources also support the conclusion that a plaintiff does not have to prove a case within a case to prevail in all legal malpractice actions. For instance, Colorado's pattern jury instructions include suggested instructions for a legal malpractice action when the claim against the attorney does not involve the handling of an underlying claim or case, and such instructions do not require proof of a case within a case. CJI-Civ. 4th 15:18 (2014).[4] Conversely, the suggested instructions for when the claim *761 does involve the handling of an underlying matter include a requirement to prove a case within a case. CJI-Civ. 4th 15:19 (2014); CJI-Civ. 4th 15:20 (2014). And significantly, the comments to the Restatement note that "the plaintiff in a previous civil action may recover without proving the results of a trial if the party claims damages other than loss of a judgment." Restatement (Third) of Law Governing Lawyers § 53 cmt. b (2000).
¶ 43 Law Firm's argument that every legal malpractice plaintiff has to prove a case within a case would lead to the absurd result that a plaintiff's ability to recover for an injury unrelated to the outcome of an underlying action would depend on the outcome of the underlying action. Moreover, it would immunize certain attorneys from the consequences of their negligence, a result that finds no support in the law.
¶ 44 Instead, "[t]he manner in which the plaintiff can establish, but for causation ... depends on the nature of the attorney's error.... Where the injury claimed does not depend on the merits of the underlying action or matter, the case-within-a-case methodology is not applicable." 4 Ronald E. Mallen, Legal Malpractice § 37:87 (2015).
¶ 45 The case within a case requirement makes eminent sense when the claimed injury relates to the lawyer's representation of a client in litigation. When the lawyer acts negligently with respect to the litigation, the only way to determine if the negligence caused the harm claimed by the client is to compare what actually happened with what would have happened had the negligence not occurred: the case within a case requirement.
¶ 46 The case within a case requirement, modified to conform to the particular facts of the case, also logically applies when the claimed injury relates to an underlying business transaction. The supreme court has explained that the " 'case within a case' framework" applies in legal malpractice cases involving an alleged unfavorable business transaction. Gibbons, ¶¶ 15-17.[5] In such cases, "a plaintiff must show that he would have obtained a more favorable result in the underlying transaction but for [a] professional's negligence." Id. at ¶ 16.
¶ 47 The cases cited by Law Firm for the proposition that Colorado law requires a plaintiff to prove a case within a case in every legal malpractice case all addressed these types of factual situations, in which the plaintiffs' claimed injuries related to the outcome of the underlying litigation or business transaction. Those cases consequently do not dictate whether proof of a case within a case should be required in a legal malpractice action, like this one, in which the claimed injury does not relate to the outcome of the underlying matter.
¶ 48 When the theory of the case is not that the plaintiff would have obtained a more favorable result in the underlying litigation or business transaction but for the attorney's negligence, it makes no sense to require the plaintiff to prove that he or she would have done so. Proving a case within a case in such a situation would not establish that the plaintiff's claimed injury was caused by the attorney's negligence because the claimed injury is independent of the outcome of the litigation or transaction.
¶ 49 Accordingly, when the injury claimed does not depend on the merits of the underlying action or matter, the plaintiff does not need to prove a case within a case. Rather, the plaintiff must prove that the attorney's negligent acts or omissions caused him or her to suffer some financial loss or harm by applying the generally applicable test for cause in fact in negligence actions: that the plaintiff would not have suffered the harm but for the attorney's negligence. See CJI-Civ. 4th 15:18 (2014); see also Restatement (Third) of Law Governing Lawyers at § 53 cmt. e ("Generally applicable principles of causation and damages apply in malpractice actions arising out of a nonlitigated matter.").
*762 b. Legal Cause
¶ 50 "[T]ort law does not impose liability on an actor for all harm factually caused by the actor's tortious conduct." Raleigh v. Performance Plumbing & Heating, 130 P.3d 1011, 1022 (Colo.2006) (internal quotation marks omitted). Thus, once causation in fact is established, legal cause (or proximate cause) must be determined. Reigel, 292 P.3d at 986. The concept of legal cause is essentially "an attempt to spell out rules of law limiting the liability of a negligent actor." Moore, 192 P.3d at 436 (internal quotation marks omitted); see also Raleigh, 130 P.3d at 1021. The issue is one of "the policy which imposes liability." Moore, 192 P.3d at 436 (internal quotation marks omitted).
¶ 51 "[F]oreseeability is the touchstone of proximate [or legal] cause." Westin Operator, LLC v. Groh, 2015 CO 25, ¶ 33 n.5, 347 P.3d 606. To establish a negligence claim, a plaintiff must prove that the damages sustained were a "reasonably foreseeable" consequence of the defendant's negligence. Vanderbeek v. Vernon Corp., 50 P.3d 866, 872 (Colo.2002)"The exact or precise injury need not have been foreseeable, but it is sufficient if a reasonably careful person, under the same or similar circumstances, would have anticipated that injury to a person in the plaintiff's situation might result from the defendant's conduct." Id. (internal quotation marks omitted). The concept of foreseeability in the context of legal cause embodies policy considerations of whether a defendant's responsibility should extend to the results in question. Koca v. Keller, 97 P.3d 346, 353 (Colo.App.2004), reversed on other grounds, 111 P.3d 445 (Colo.2005).
¶ 52 The seminal tort case of Palsgraf v. Long Island Railroad Company, 248 N.Y. 339, 162 N.E. 99, 101 (1928), similarly holds that liability for negligence is limited to reasonably foreseeable injuries: "[i]f the harm was not willful, [the plaintiff] must show that the act as to him [or her] had possibilities of danger so many and apparent as to entitle him [or her] to be protected against the doing of it." Because in Palsgraf "[n]othing in the situation gave notice" that the actor's conduct "had in it the potency of peril to persons" in the plaintiff's position, the plaintiff could not recover for injuries she suffered that had resulted from the chain of events initiated by the actor's conduct. Id. at 99.[6]
¶ 53 The test for legal cause has also been described as limiting liability to those harms that result from the risks that made the actor's conduct tortious. Raleigh, 130 P.3d at 1022. "Applying this rule requires consideration of both the risks that made the actor's conduct tortious and whether the harm for which recovery is sought was a result of any of those risks." Id. (internal quotation marks omitted). If the harm resulted from the risks that made the actor's conduct negligent, the harm is considered to be within the scope of the risk created by the actor's conduct. See Webb v. Dessert Seed Co., Inc., 718 P.2d 1057, 1063 (Colo.1986).
¶ 54 Damages resulting from attorney negligence can have multiple causes. Allen, 203 P.3d at 566. However, in some cases, "the chain of causation ... may be so attenuated that no proximate cause exists as a matter of law." Lyons v. Nasby, 770 P.2d 1250, 1257 (Colo.1989), superseded by statute on other grounds as stated in Reid v. Berkowitz, 2013 COA 110M, ¶ 52, 315 P.3d 185.
3. Damages
¶ 55 To establish a claim for attorney malpractice founded in negligence, a *763 plaintiff must prove that he or she suffered damages as a result of an attorney's negligence. Broker House Int'l, Ltd. v. Bendelow, 952 P.2d 860, 863 (Colo.App.1998). "Damages are a measure of the loss or harm, generally in the form of pecuniary compensation, resulting from an injury suffered by a person because of the ... negligence of another." Wilcox v. Clark, 42 P.3d 29, 30 (Colo.App.2001). The plaintiff must prove the damages he or she suffered with reasonable certainty. Vanderbeek, 50 P.3d at 873. "Damages need not be proved with mathematical certainty," but the plaintiff "must prove the fact of damage and provide evidence sufficient to allow a reasonable estimate of the loss sustained." Hoff & Leigh, Inc. v. Byler, 62 P.3d 1077, 1079 (Colo.App.2002).
B. Application
¶ 56 We now consider the elements of a legal malpractice action in respect to the two components of Developer's claim against Law Firm: (1) the legal expenses Developer incurred that it contended it would not have incurred but for Law Firm's negligence and (2) the business losses Developer sustained that it contended it would not have sustained but for Law Firm's negligence.
1. Damages Based on Legal Expenses Incurred
¶ 57 We conclude that the evidence was sufficient to establish that Developer proved its malpractice claim for damages based on the legal expenses it incurred because of Law Firm's incorrect advice.
¶ 58 Law Firm owed Developer a duty to render competent advice on the insurance coverage issue. Developer proved, to the satisfaction of the jury, that Law Firm agreed to analyze whether the insurance policies provided insurance coverage to pay a judgment against the contractor, and Law Firm advised Developer that they did. Accordingly, whether providing this advice was outside the scope of Law Firm's employment with Developer as defined by Law Firm's engagement letter (fee agreement) is irrelevant, because once Law Firm undertook the additional or revised engagement, it had a duty to "employ that degree of knowledge, skill, and judgment ordinarily possessed by members of the legal profession" in completing it. Stone v. Satriana, 41 P.3d 705, 712 (Colo.2002) (internal quotation marks omitted).
¶ 59 While reasonable persons may very well have reached different conclusions on this issue, the evidence was sufficient to support the jury's finding that Law Firm breached the duty of care it owed to Developer. Such evidence included Developer's legal expert's testimony that, in his opinion, Law Firm's incorrect advice about the insurance coverage constituted a breach of its duty to Developer because Law Firm failed to exercise the degree of care required for an attorney under the circumstances.
¶ 60 Regarding causation, we conclude that the theory on which Developer sought damages for the legal expenses it had incurred because of Law Firm's negligence did not require Developer to establish a case within a case. Developer's theory was not that its injury resulted from an unsuccessful or unfavorable outcome in the litigation in which Law Firm represented it, but that it made a costly decision to continue pursuing the counterclaims against the contractor and would not have done so had Law Firm correctly advised it that there was no insurance coverage to pay a judgment against the contractor on the counterclaims. Under such a theory, a determination that Developer would have achieved a more favorable result in the underlying case but for Law Firm's negligence would not establish that Law Firm's negligence caused the claimed damages.
¶ 61 Evidence that Developer would not have suffered those damages but for Law Firm's negligence was thus sufficient to prove that Law Firm's incorrect advice was the cause in fact of the legal expenses Developer incurred in litigating its counterclaims after the advice was given. This evidence included testimony by Developer's principals that but for the incorrect advice, Developer would not have continued incurring legal expenses in an attempt to prove its counterclaims.
*764 ¶ 62 Developer also presented sufficient evidence to support a determination that Law Firm's negligence was the legal cause of those expenses. A reasonably careful attorney under the same or similar circumstances could have reasonably foreseen that Law Firm's incorrect advice could cause a plaintiff in Developer's position to incur legal expenses that it otherwise would have chosen not to incur had it known that there was no insurance coverage to pay a judgment in its favor. See Vanderbeek, 50 P.3d at 872.
¶ 63 Finally, we conclude that the evidence was sufficient to establish that Developer suffered damages as a result of Law Firm's negligence. Law Firm argues that Developer suffered no cognizable damages because it was insolvent and would have remained in that state regardless of whether it had sold all of its units and wound down in 2007. Law Firm characterizes Developer's damages theory-that it would have been in the red anyway but it was more in the red because of Law Firm's negligence-as a theory of "deepening insolvency," which it argues is not a legally cognizable basis for damages.
¶ 64 But this argument, whatever its merits, does not apply to the legal expenses Developer incurred because of Law Firm's negligence. Rather than the difference between a lesser loss and a greater loss, the cost of the legal expenses was a loss Developer would not have suffered to any extent but for Law Firm's negligence. Accordingly, those legal expenses constituted a concrete loss that Developer suffered as a result of Law Firm's negligence, and Developer thus claimed cognizable damages for the cost of those expenses.
2. Damages Based on Business Losses Sustained
¶ 65 However, we conclude that Developer cannot recover damages based on the business losses it sustained because, as a matter of law, Law Firm's advice regarding the insurance coverage was not the legal, or proximate, cause of Developer's claimed business losses (the approximately $3 million Developer lost because it decided not to sell the seventeen remaining units in 2007).[7]
¶ 66 Developer argues that this case is analogous to Vanderbeek, 50 P.3d at 868, in which the supreme court held that the defendant's wrongful attachment of the plaintiff's funds was the legal cause of the damages the plaintiff suffered despite the fact that the damages would not have occurred if the stock market had not fluctuated.
¶ 67 In Vanderbeek, the defendant, a former business partner of the plaintiff, wrongfully attached approximately $1 million of the plaintiff's funds. Id. The plaintiff corporation had intended to use some of that money to buy a certain number of shares of stock in a specific company. Id. At the time the money was wrongfully attached, the shares were trading at a much lower price than they were when the money was released. Id. at 868-69. Accordingly, by the time the money was released, the plaintiff could purchase fewer than half the shares it would have been able to purchase but for the wrongful attachment. Id. at 869.
¶ 68 The supreme court held that, although the defendant had no actual knowledge that the plaintiff intended to purchase the shares, *765 "it was reasonably foreseeable that the money attached was to be used for investment purposes of some kind" and it likewise "was reasonably foreseeable that attachment of the funds would prevent, or at least delay, such an investment and cause damage thereby." Id. at 873. Accordingly, the supreme court held that the defendant's wrongful attachment was the legal cause of the increase in price the plaintiff paid to acquire the shares and its inability to purchase the additional shares it had intended to purchase. Id.
¶ 69 Developer argues that the business losses it suffered here were similarly foreseeable, both because Law Firm knew of its plans to remove the units from the market in 2007 and because the fluctuation of the real estate market can be reasonably foreseen by any home buyer (and thus presumably by an ordinary attorney). It therefore contends that its potential inability to sell the seventeen units at a later date at or above the original contract prices or the prices at which the initial twenty units sold was within the foreseeable scope of the risk created by Law Firm's negligent advice and Developer's reliance thereon. We disagree.
¶ 70 Unlike in Vanderbeek, where the claimed injury was a direct result of the negligent attachment of certain funds, Developer's claimed injury was not directly dependent on its inability to collect a potential judgment on its counterclaims. The fact that ultimately there would have been no insurance coverage to pay a judgment against the contractor was not the cause of Developer's claimed business losses. Rather, those losses occurred because of a decision it independently made in reliance on Law Firm's incorrect advice that there was insurance coverage.
¶ 71 We agree with Developer that an attorney in Law Firm's position could have reasonably foreseen that Developer would make business decisions based on Law Firm's advice that there was insurance coverage to pay a judgment against the contractor if Developer prevailed on its counterclaims. However, the actual harm Developer suffered because of that business decision was not within the scope of the risk created by Law Firm's negligence.
¶ 72 The direct harm risked by Law Firm's incorrect advice was the harm Developer might have suffered from its inability to recover the anticipated insurance proceeds. But Developer's business losses did not result from its inability to recover a potential judgment on its counterclaims; rather, they resulted from Developer' decision to cancel existing sales contracts and take the units off the market. Under these circumstances, the business losses Developer suffered, although factually caused by Law Firm's negligence, did not result from the risks that made Law Firm's conduct negligent. See Raleigh, 130 P.3d at 1022
¶ 73 Nor could a reasonably careful attorney in Law Firm's position foresee such a result. Although Law Firm knew of Developer's plan to take the units off the market in 2007, nothing in the record indicates that Law Firm had reason to believe that this action was dependent on its advice about the insurance coverage. There was also no evidence that Law Firm told Developer that it was likely to succeed on its counterclaims or that Law Firm thought that Developer believed that it was likely to so succeed.
¶ 74 Thus, although as a general matter it is reasonably foreseeable that a client will make business decisions in reliance on advice his or her attorney gives in connection with litigation, and that market fluctuations might increase or decrease the resulting harm, no reasonable attorney could be expected to foresee the harm that resulted here.
¶ 75 Moreover, unlike Developer's decision to continue litigating the counterclaims in reliance on Law Firm's incorrect advice, Developer's business decision to take the units off the market did not cause any loss to Developer until after additional events occurred, including the real estate market collapse. But the losses caused by the real estate market collapse were not the kind of losses that Law Firm's duty to competently advise Developer about the insurance coverage served to prevent.
¶ 76 The Seventh Circuit addressed a similar situation in *766 Movitz v. First National Bank of Chicago, 148 F.3d 760 (7th Cir.1998). In that case, a corporation purchased a building in Houston for $5.1 million in reliance on the defendant bank's advice that the building was a good real estate investment. Id. at 761. The evidence presented at trial indicated that the agreement between the parties imposed a duty on the bank to evaluate in advance whether the purchase was a good investment and that the bank did not do so. Id. at 762. It carelessly failed to check the building for certain structural defects, which it would have discovered, and it carelessly miscalculated the net income the building would generate. Id. The corporation ultimately lost its entire investment, but not because of the problems with the building; rather, the loss occurred because Houston's real estate market collapsed. Id. at 761.
¶ 77 The court assumed that the bank's negligence was a but for cause of the corporation's loss because the corporation asserted that it would not have purchased the building had the bank performed an adequate investment analysis of the purchase. Id. at 762. Nevertheless, the court held that the corporation could not recover damages from the bank for its loss. Id. at 762-63. The court explained that the corporation's loss was not a foreseeable consequence of the bank's negligence because the bank's "duty was to take precautions against a different kind of loss from the one that materialized." Id. at 763. Because the loss that occurred was not the kind of loss that the bank's duty to investigate the building was intended to prevent, to hold the bank liable for the loss would make it an insurer against business risks outside of its control. Id.
¶ 78 The Seventh Circuit explained in a later case that Movitz does not stand for the proposition that losses that occur because of general market conditions are never recoverable, a proposition which would be inconsistent with Vanderbeek . See Trident Inv. Mgmt., Inc. v. Amoco Oil Co., 194 F.3d 772, 778 (7th Cir.1999). Rather, the focus in Movitz was the connection "between the type of duty that was allegedly breached ... and the source of the damages the plaintiff was claiming." Id. That the corporation claimed it never would have bought the building but for the bank's negligent advice "did not make [the bank] an insurer for everything else that might happen in the world after the purchase took place." Id. at 779.
¶ 79 As in Movitz, the link between Law Firm's incorrect advice, the consequent business decision by Developer, and the real estate market collapse is too attenuated as a matter of law for Law Firm to be liable for the business losses that Developer sustained here. See First Fed. Sav. & Loan Ass'n of Rochester v. Charter Appraisal Co., Inc., 247 Conn. 597, 724 A.2d 497, 503 (1999).
¶ 80 We thus conclude that, viewing the evidence in the light most favorable to Developer, no reasonable juror could have concluded that Developer's claimed business losses were a reasonably foreseeable result of Law Firm's incorrect advice. See Reigel, 292 P.3d at 985-96. Accordingly, we hold that, as a matter of law, Law Firm's negligence was not the legal cause of those losses.
V. Other Arguments
¶ 81 Because we hold that Law Firm's negligence was not the legal cause of Developer's claimed business losses, it is unnecessary for us to address the other arguments Law Firm raises regarding the business losses component of Developer's claim. These arguments include that Developer had to prove a case within a case to recover damages for its claimed business losses, that Developer's asserted damages for those losses were not legally cognizable because they were based on its deepening insolvency, and that Developer was not entitled to prejudgment interest because its only damages were accounting losses-the difference between two negative balance sheets-and no interest can accrue on negative equity.
VI. Conclusion and Remand Order
¶ 82 The judgment is affirmed in part and reversed in part, and the case is remanded for further proceedings.
¶ 83 We affirm the judgment to the extent that the damages were based on the legal fees and related expenses Developer incurred that it would not have incurred but for Law Firm's negligence. The case is remanded *767 for a new trial, on damages only, limited to determining the amount of damages Developer incurred in continuing to pursue its counterclaims against the contractor after receiving the incorrect advice from Law Firm. The court should enter judgment against Law Firm for the amount determined, plus prejudgment interest.[8]
¶ 84 That portion of the judgment based on the economic disparity between the hypothetical project losses Developer would have sustained had it liquidated its properties by the end of 2007 and the project losses it actually sustained is reversed.
JUDGE TAUBMAN and JUDGE HAWTHORNE concur.

Law Firm denied that it gave such advice. However, by its verdict, the jury necessarily rejected Law Firm's evidence in this respect, and Law Firm concedes that this factual issue has been resolved against it and is not before us on appeal.

The parties agree that regardless of the course of action taken by Developer in 2006 and 2007, Developer would have sustained a loss from the project. The only question was how much of a loss.

The two elements of causation have been assigned various descriptions by courts and legal authorities. Causation in fact is also referred to as "actual cause" or "but for cause," and proximate cause is also described as "legal cause." See Dan B. Dobbs, The Law of Torts § 167, at 407-08 (2000).

We acknowledge, as Law Firm points out, that "pattern instructions are not law, not authoritative, and not binding," and that they therefore "do not trump case law." Krueger v. Ary, 205 P.3d 1150, 1154 (Colo.2009). However, pattern instructions can provide useful guidance in certain circumstances because they were drafted "to reflect the prevailing law." Fed. Ins. Co. v. Publ. Serv. Co., 194 Colo. 107, 110, 570 P.2d 239, 241 (1977) ; see also People v. Flockhart, 2013 CO 42, ¶ 12, 304 P.3d 227 ("The pattern instructions are not law, not authoritative, and not binding ... , but they are grounded in [the supreme court's] longstanding practice and are regularly consulted to determine whether jury instructions are erroneous."); C.R.C.P. 51.1(1) ("In instructing the jury in a civil case, the court shall use such instructions as are contained in Colorado Jury Instruction (CJI) as are applicable to the evidence and the prevailing law." (emphasis added)).

Although Gibbons v. Ludlow addresses the requirements for establishing professional negligence against a transactional real estate broker, the supreme court makes clear in Gibbons, 2013 CO 49, ¶¶ 15 n.2, 16, 304 P.3d 239, that the case within a case framework is the test for causation that applies in legal malpractice cases involving a claimed injury arising from an attorney's negligent handling of an underlying business transaction.

The majority opinion in Palsgraf v. Long Island Railroad Company, 248 N.Y. 339, 162 N.E. 99 (1928), addressed the duty element of a tort claim, not causation. However, the question of "reasonable foreseeability" bears on the elements of both duty and legal cause. Strauch v. Build It & They Will Drink, Inc., 226 P.3d 1235, 1237 (Colo.App.2009) (citing Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 546, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994) ). In fact, Colorado courts have cited Palsgraf for the proposition that the concept of foreseeability limits a defendant's liability for a plaintiff's injuries in the context of discussing both duty and legal cause. See, e.g., Samuelson v. Chutich, 187 Colo. 155, 160, 529 P.2d 631, 634 (1974) ; Valley Dev. Co. v. Weeks, 147 Colo. 591, 597, 364 P.2d 730, 733 (1961) ; Sewell v. Pub. Serv. Co., 832 P.2d 994, 998 (Colo.App.1991). We therefore believe that Palsgraf provides a useful analysis for evaluating legal cause.

The only instruction the jury received on causation stated that "[t]he word 'cause' ... means an act or failure to act which in natural and probable sequence produced the claimed damages and losses. It is a cause without which the claimed damages and losses would not have happened." Notably, this instruction states the test for cause in fact but does not supply the test for legal cause. The pattern jury instructions suggest a legal cause instruction providing that "[t]he negligence ... of the defendant ... is not a cause of any (injuries) (damages) (losses) to the plaintiff ... unless injury to a person in the plaintiff's situation was a reasonably foreseeable result of that negligence." CJI-Civ. 4th 9:21 (2014). Neither party requested this or a similar instruction and the court did not sua sponte give one. In some cases, a party's failure to request a jury instruction on a specific issue could limit its ability to obtain appellate relief based on that issue. However, Law Firm's failure to request a specific legal causation instruction does not influence the outcome here because the evidence was insufficient to establish legal causation as a matter of law. Because the evidence would not allow us to sustain a jury finding that legal cause existed regardless of how the jury was instructed, Law Firm's failure to request a legal causation instruction is irrelevant to our analysis.

Because of our resolution of this case, we need not address Law Firm's argument that prejudgment interest was not available on Developer's losses. Liability for legal expenses invokes a straightforward application of the prejudgment interest statute. See § 5-12-102(1), C.R.S.2014.